IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| SAM GREENLEAF, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 3:06cv330-CSC |
| | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**I. Introduction**

The plaintiff applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 et seq., alleging that he was unable to work because of a disability. His application was denied at the initial administrative level. The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ also denied the claim. The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security (Commissioner).[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the court for review pursuant to 42 U.S.C.

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

§§ 405 (g) and 1383(c)(3).[2]  Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be affirmed.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months...

To make this determination[3] the Commissioner employs a five step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1)  Is the person presently unemployed?
> (2)  Is the person's impairment severe?
> (3)  Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4)  Is the person unable to perform his or her former occupation?
> (5)  Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

[2] Pursuant to 28 U.S.C. § 636(c), the parties have consented to entry of final judgment by the United States Magistrate Judge.

[3] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[4]

The standard of review of the Commissioner's decision is a limited one.  This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  A reviewing court may not look only to those parts of the record which supports the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III.  The Issues

**A. Introduction.**  The plaintiff was 53 years old at the time of the hearing before the ALJ and has an 11th grade education.  The plaintiff's prior work experience includes work as a truck driver, construction worker, farm worker and laborer.  Following the

---

[4]*McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI).  The same sequence applies to disability insurance benefits.  Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

administrative hearing, the ALJ concluded that the plaintiff has severe impairments of degenerative disc disease of the lumbar spine with disc herniation, degenerative disc disease of the cervical spine, noninsulin dependent diabetes mellitus, alcohol and polysubstance abuse, human immunodeficiency virus (HIV infection), history of head injury with surgery, and personality disorder NOS.[5]  The ALJ concluded that the plaintiff was disabled due to alcohol and drug abuse.  (R. 26)  Nonetheless, the ALJ concluded that the plaintiff was not disabled because his alcoholism and drug abuse is a contributing factor material to the disability finding and that excluding the alcohol and drug abuse the plaintiff has the residual functional capacity to perform light work.

     **B.  Plaintiff's Claims**.  The plaintiff generally claims that the ALJ erred in denying benefits to him based on the materiality of alcohol and drug abuse.  More particularly, the plaintiff argues that his disc disease is disabling and that his substance abuse can have no effect on that disability.  At first glance, the argument is appealing, but analysis shows that its major premise is incorrect, because substantial evidence supports the ALJ's conclusion that the plaintiff's disc disease is not disabling.

     First, the court will discuss how substance abuse is considered under the applicable law, and then the court will discuss this particular case.  A claimant "shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that

---

[5]The ALJ also found non-severe impairments of hypertension and hepatitis.  (R. 26)

4

the individual is disabled." Pub. L. No. 104-121, § 105(a)(1), (b)(1), 110 Stat. 847, 852, 853 (codified as amended at 42 U.S.C. § 423(d)(2)(C) (1997)). The regulations implementing § 423(d)(2)(C) provide that once the Commissioner determines a claimant to be disabled and finds medical evidence of drug addiction or alcoholism, the Commissioner then "must determine whether ... drug addiction or alcoholism is a contributing factor material to the determination of disability." 20 C.F.R. § 404.1535.  The key factor in determining whether drug addiction or alcoholism is a contributing factor material to the determination of a disability (the "materiality determination") is whether the claimant would still be found disabled if he stopped using drugs or alcohol. *See* 20 C.F.R. § 404.1535(b)(1).

The ALJ is to determine which of the claimant's physical and mental limitations would remain if the claimant stopped using drugs or alcohol. Then the ALJ must determine whether any of the claimant's remaining limitations would be disabling. 20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2).  If the ALJ determines that the remaining limitations would not be disabling, the ALJ must find that the claimant's "drug addiction or alcoholism is a contributing factor material to the determination of disability." 20 C.F.R. §§ 404.1535(b)(2)(i), 416.935(b)(2)(i). However, if the ALJ determines that the remaining limitations would be disabling, the ALJ must conclude that the claimant is "disabled independent of [his or her] drug addiction or alcoholism and ... [his or her] drug addiction or alcoholism is not a contributing factor material to the determination of disability." 20 C.F.R. §§ 404.1535(b)(2)(ii), 416.935(b)(2)(ii).

The ALJ's approach in this case is wholly consistent with the law.  He found the

plaintiff disabled due to drug and alcohol abuse but found him not disabled excluding the substance abuse. The plaintiff argues that his disc disease is disabling, and it is to that question which the court now turns.

In October 2004, an MRI of the plaintiff's lumbar spine was performed. The radiologist reviewing the results found the following.

> The patient shows bulging disc material at every lumbar level with the most severe disc herniation at L3-4 and L4-5. The L4-5 disc herniation is quite severe with a spinal stenosis and bilateral L-5 nerve root sleeve impingement because of the disc herniation and facet joint hypertrophy. The most significant lesion appears to be at L4-5.
>
> At L5-S1, there is a bulging disc with some moderate facet joint hypertrophy. I do not see quite a severe impingement on the lateral recesses at L-5 however.
>
> At L3-4, there is disc herniation which is central and right sided causing right sided L-4 nerve root sleeve impingement. This is significant.
>
> At L2-3 and L1-2 there is moderate bulging of disc material without lateral recess impingement.
>
> The vertebral bodies have normal appearance without tumor or marrow replacement lesion. The distal cord appears normal. I do not see any other abnormalities.
>
> IMPRESSION:
>
> 1. Multi level significant disc herniation the worst at L4-5 . . . There is significant spinal stenosis and bilateral L-5 nerve root sleeve impingement because of the spinal stenosis and disc herniation at this level.
>
> 2. Significant disc herniation at L3-4 with right sided lateral recess impingement.
>
> The other disc bulges at multiple levels without quite as severe impingement on the nerve roots.

(R. 1197-98)

The plaintiff argues that the ALJ completely ignored his severe disc disease, relied on the testimony of a non-examining medical expert who did not have the benefit of the MRI results set out above, and did not consider the opinions of the VA physicians who treated the plaintiff.  Each of these arguments lacks merit.

The ALJ did not ignore the plaintiff's disc disease in his analysis of the plaintiff's claims of disability.  The ALJ was aware of and considered the October 2004 MRI.  (R. 25)  In addition, unlike the plaintiff, the ALJ also considered the plaintiff's examination in February 2005.

> The claimant presented for follow-up examination.  The claimant complained of severe low back pain.  He rated the severity of his pain, on average, during the last month at "8" (pain rating: 0 = no pain, 10= greatest pain).  He was supposed to be seen at the neurosurgery clinic in Birmingham but did not get the notice of the appointment on time . . .  A physical examination showed a supple neck with no adenopathy, clear edema, and positive straight leg raising with radicular pain at 15 degrees bilaterally . . .  The doctor prescribed Naprosyn for back pain.

(R. 25)

After an exhaustive review of all of the medical evidence including the consultative examinations, the ALJ made these findings about the plaintiff's disc disease.

> The claimant experiences low back pain with radiation into the right leg.  His symptoms can be reasonably related to degenerative disc disease of the lumbar and/or cervical spine. In his testimony, the claimant suggested that his back problems began in the military, but I note that, in February 2003, he reported to his doctor that his pain had started just three months earlier. Diagnostic testing has revealed lumbar disc herniations with nerve root impingement consistent with his symptoms but other medical evidence suggests that his pain has been intermittent in duration and, for the most part, moderate in severity.  For example, clinical findings have not always been consistent.  On some occasions, doctors have observed tenderness in the lumbar area, positive

straight leg raising on the right, diminished right ankle jerk, and decreased sensation in the right leg, and a limp favoring the right leg. On other occasions, doctors have observed normal (i.e., 5/5) muscle strength in all extremities, a normal gait, no lumbar tenderness, normal sensation, normal (i.e., 5/5) muscle strength in all extremities, a normal gait, no lumbar tenderness, normal sensation, normal (i.e., two+ and equal) deep tendon reflexes, full flexion of the back to 90 degrees, full range of motion of the neck, ability to walk on heels and toes, and no muscle spasm. Doctors have not observed muscle atrophy, which would indicate significant disc use of the right leg. Treatment has been conservative in nature, consisting of physical therapy and medication. The claimant received significant relief with physical therapy. At the beginning of the therapy, in April 2003, his pain was rated at the moderately severe ("7/10") level. In May and June 2003, his pain was rated at the mild ("two" or "3") level. With regard to pain medication, doctors have prescribed Hydrocodone on occasion, but most prescriptions have been for anti-inflammatories (i.e., Ibuprofen, Lodine, Naproxen). At the time of the hearing, the claimant was not taking any prescription pain reliever.

There are also other factors or inconsistencies which lead me to believe that claimant's pain has not generally exceeded a moderate level. To give some examples: (1) In March 2003, the staff at the Veterans Administrative (sic) Medical Center (VAMC) were willing to issue a cane so that the pressure could be taken off his right leg, but the claimant refused the cane, stating that it would slow him down . . . (2) In March 2003, the claimant complained of severe (10/10) low back pain. It appears, however, that the intensity of pain was the result of his lifting and moving heavy furniture so that he could paint patient's rooms . . . (3) On September 24, 2003, the claimant reported having moderately severe (8/10) low back pain. When the doctor examined him, however, he observed the claimant to be in no acute distress and to have no tenderness to palpation in his lumbar area. (4) In July 2004, the VAMC staff noted that the claimant was taking pain pills for lower back pain. They asked him to rate the degree of interference that pain head upon his functioning. Such rating was based on a scale of 0–10, in which 0 equaled "does not interfere" and 10 equaled "completely interferes." The claimant assigned a "2" to generally (sic) activity, mood, normal work, ability to concentrate, and sleep; "3" to relations with other people; and "4" to the enjoyment of life . . . (5) When, on several occasions, the VAMC staff had asked the claimant to rate his low back and right leg pain, on an average, for the last month, the claimant rated his pain at a mild to moderate . . . level . . . (6) In his testimony, the claimant indicated that he was prescribed a new pain medication at his last doctor's appointment on the Thursday prior to the hearing date. He was not,

> however, taking this medication as yet.  In reviewing the VAMC records submitted after the hearing, it appears that his last doctor visit took place on February 15, 2005, two months before the hearing day.  At that time, the doctor did authorize a pain medication called Naprosyn/Naproxen, an anti-inflammatory drug.  This, however, is not a new medication, but one that has been previously prescribed . . .

(R. 30)

In addition to these findings and observations by the ALJ, the record shows that while hospitalized at the VAMC from August to November 2004 for substance abuse treatment, the plaintiff engaged in activities of daily living which are wholly inconsistent with disc disease of the severity alleged. On November 16, 2004, he participated in a free meal for veterans event. (R. 693). On November 14, 2004, he reported that during a 48 hour pass he found a place to live upon his release and  "went shopping."  (R. 696).  On November 3, 2004, the VAMC staff reported that during a 48 hour pass the plaintiff attended an AA meeting and an NA meeting, had an "outing in the park," and went shopping and riding.  (R. 707).  Notably, these activities occurred after the October 2004 MRI on which the plaintiff so heavily relies to support his allegation of disability.  Plainly, the activities of the plaintiff recounted above are inconsistent with his claims.

The plaintiff also complains that the ALJ relied on the opinion of the medical expert and also argues that his condition meets Listing 1.04A, Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, Pt. A.  This is how the plaintiff states his argument in his brief.

> [T]his general practitioner with a background in thoracic and cardiovascular specialties is not qualified to negate the opinion of treating neurologists and

> specialists in the interpretation of CT scan and MRI results. In addition to MRI and CT results, the VAMC doctors have described a neuro-anatomic distribution of pain of the lower extremities which Plaintiff submits is sufficient for a finding of disability under musculoskeletal system Listing 1.04 of disorders of the spine including herniated nucleus pulposus with compromise of a nerve root or the spinal cord.

(Mem. of Law in Supp. of Pl's Argument at 7).

For this opinion, the court will assume that the doctors at the VAMC meet the definition of treating physician.[6] The law of this circuit is clear. The testimony of a treating physician must be given substantial or considerable weight unless "good cause" is shown to the contrary. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). A similar preference for the opinions of treating doctors is found in the Commissioner's regulations:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultive examinations or brief hospitalizations.

20 CFR § 404.1527(d)(2).

However, in *Edwards v. Sullivan,* 937 F.2d 580, 584-85 (11th Cir. 1991), the court found that the ALJ did not err in relying on the opinion of a non-examining physician where the non-examining physician's opinion was consistent with the opinions of examining physicians. While it is correct that the ALJ relied on the medical expert's conclusion that the plaintiff's "symptoms would improve in the absence of alcohol and drug use," (a conclusion

---

[6]*See* 20 C.F.R. § 404.1502 (definition of treating source)

which hardly requires evidence from an expert), the plaintiff overlooks what the ALJ also said about this evidence.  "While Dr. Anderson is not a treating or examining physician, he had the opportunity to review most of the evidence of record.  His opinion is consistent with the substantial evidence more fully discussed below."  (R. 27).  After that observation, the ALJ discussed that evidence in depth and the court will not belabor the question or lengthen this opinion with the obvious.  The ALJ fully considered the evidence, and that evidence represents substantial evidence supporting the ALJ's conclusion.  The plaintiff argues that his VA doctors gave a contrary opinion.  But the plaintiff does not point the court to any evidence that those doctors gave any "opinion" at all.  The October MRI results shows "neuro-anatomic distribution of pain," but that is not an opinion that the plaintiff is disabled; it is merely an objective description of a medical finding.  The opinions of all the doctors are consistent with the evidence, and there is substantial evidence supporting the ALJ's conclusion that the plaintiff has the residual functional capacity to perform some types of light work.

Listing 1.04A generally concerns disorders of the spine and specifically evidence of nerve root compression characterized by specific clinical findings.  The October 2004 MRI is evidence of nerve root compression.  However, the alone is not enough.  The listing further requires

> [e]vidence of nerve root compression characterized by neuro-anatomic distribution, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness), accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine) . . .

Listing 1.04A, Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, Pt. A.

The ALJ gave significant weight to the consultative examination by Dr. Golomb, (R. 27), whose findings (R. 504) show among other things no atrophy or muscle weakness. Thus, there is substantial evidence supporting a conclusion that the plaintiff does not meet Listing 1.04A.

In the final analysis, the plaintiff is correct about one thing. His substance abuse has no effect or impact on his disc disease. However, the evidence supports a conclusion that the disc disease is not disabling. Rather, the record fully supports the ALJ's conclusion that the plaintiff's disability arises from his substance abuse which, therefore, is material to the finding of disability. As a matter of law, the plaintiff is not entitled to benefits and the decision of the Commissioner is due to be affirmed. A separate final judgment will be entered.

Done this 10th day of September, 2007.

      /s/Charles S. Coody
CHARLES S. COODY
CHIEF UNITED STATES MAGISTRATE JUDGE